UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

OPELTON KELLY,

                    Plaintiff,                      Case No. 1:23-cv-67

v.                                                  Honorable Ray Kent

CORIZON OF MICHIGAN et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 as well as

the Americans with Disabilities Act (ADA). In an opinion and order (ECF Nos. 10 and 11) entered

on March 27, 2023, the Court denied Plaintiff leave to proceed *in forma pauperis* because he has

accrued three "strikes" for purposes of 28 U.S.C. § 1915(g). After receiving an extension of time

to do so (ECF Nos. 12 and 13), Plaintiff paid the full $402.00 filing fee on May 26, 2023. Pursuant

to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to

proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF

No. 7.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§ 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to

the service of the amended complaint.[1] *See In re Prison Litigation Reform Act*, 105 F.3d 1131,

---

[1] Plaintiff has filed a motion for leave to file an amended complaint (ECF No. 14), and he has
attached a proposed amended complaint (ECF No. 14-1) to his motion. A party may amend once
as a matter of course before a responsive pleading is filed. *See* Fed. R. Civ. P. 15(a). Plaintiff has

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all

---

not previously amended his complaint and no responsive pleadings have been filed in this action. Accordingly, Plaintiff's motion will be granted, and his attached proposed amended complaint (ECF No. 14-1) will be docketed as his amended complaint.

proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendant Morrison. Plaintiff's state law claims against Defendant Morrison will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims and ADA claims against Defendants Wellpath Now of Michigan,

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Doolittle, and Hill. Plaintiff's Eighth Amendment claims, as well as his state law claims, against Defendants Wellpath Now of Michigan, Doolittle, and Hill remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues Corizon of Michigan (Corizon)[3] and Wellpath Now of Michigan, both of which have contracted with the Michigan Department of Corrections (MDOC) to provide medical care to inmates. Plaintiff also sues Warden B. Morrison and Nurse Practitioners Heather Doolittle and Ecoe Hill.

The gravamen of Plaintiff's amended complaint concerns his assertions that he has not received adequate medical care for numerous conditions. Plaintiff contends that he has suffered from a mini-stroke, hemangioma tumors,[4] mild facet disease, paresthesia,[5] gait abnormality, lumbar pain, and numbness in his right and left legs and feet. (Am. Compl., ECF No. 14-1, PageID.33.) Plaintiff suggests that Defendants' failure to treat these conditions means that

---

[3] The Court notes that Corizon has filed a petition in bankruptcy. In accordance with 11 U.S.C. § 362, this civil action against Corizon is automatically stayed as to the debtor until the bankruptcy proceedings in question are terminated or the stay is lifted. 11 U.S.C. § 362(c). The Court will not address Plaintiff's claims against Corizon on screening.

[4] A hemangioma is "a bright red birthmark that shows up at birth or in the first or second week of life. It looks like a rubbery bump and is made up of extra blood vessels in the skin." *See* https://www.mayoclinic.org/diseases-conditions/hemangioma/symptoms-causes/syc-20352334 (last visited May 30, 2023).

[5] Paresthesia is a term used to describe tingling and a "pins and needles" sensation caused by pinched nerves. *See* https://www.mayoclinic.org/diseases-conditions/pinched-nerve/symptoms-causes/syc-20354746 (last visited May 30, 2023).

"paralysis is imminent and death." (*Id.*, PageID.34.) Plaintiff, however, does not mention many of these conditions again in the facts section of his complaint.

 Plaintiff saw Defendant Doolittle on April 8, 2021, at which time Plaintiff told her about the "severity of [his] back pain." (*Id.*, PageID.37.) On April 9, 2021, Plaintiff submitted a medical kite asking to "see his provider for pain in his back, legs[,] and feet which [was] causing him to go numb from his waist to his toes." (*Id.*) Plaintiff sent a second medical kite on April 21, 2021, asking to see the doctor for back, leg, and foot pain. (*Id.*, PageID.37-38.) In response, the healthcare department asked Plaintiff if he would like to be evaluated by a nurse. (*Id.*, PageID.38.) Plaintiff responded that he would like such an evaluation. (*Id.*)

On September 16, 2021, after "almost five months delay," Defendant Doolittle ordered that Plaintiff be referred to Dr. Dennis Dafnis (not a party) at the Neurology Center in Coldwater, Michigan. (*Id.*, PageID.37.) Defendant Doolittle also prescribed a 21-day supply of 10mg prednisone tabs for Plaintiff to take for pain. (*Id.*) Plaintiff contends, however, that the order for him to see Dr. Dafnis was not executed until several months later, in May of 2022. (*Id.*, PageID.38.) Plaintiff saw Dr. Dafnis on May 23, 2022. (*Id.*) Dr. Dafnis diagnosed Plaintiff with gait abnormality, back pain, limb paresthesia and weakness, abnormal antalgic and wide-based stance, decreased sensation in his spine, diffuse hyporeflexia, and radiculopathy. (*Id.*)

On March 13, 2022, Plaintiff asked to see a neurologist because he was losing feeling in his legs. (*Id.*, PageID.39.) On May 24, 2022, Plaintiff asked to see Defendant Doolittle regarding numbness in his back and legs, as well as the difficulty he was having walking. (*Id.*) Plaintiff mentioned that he had only been given a 21-day supply of prednisone and asked to see Defendant Doolittle to determine the next steps for managing his pain. (*Id.*) Plaintiff submitted another

request to see Defendant Doolittle on June 13, 2022. (*Id.*) On June 21, 2022, Plaintiff submitted a medical kite requesting pillows for his back, a bottom bunk detail, and ice. (*Id.*)

On June 6, 2022, Dr. Dafnis "issued a more extensive 'motor nerve study' and 'sensory nerve study.'" (*Id.*, PageID.40.) These reports outlined the severity of Plaintiff's chronic medical conditions. (*Id.*) According to Plaintiff, he continues to suffer chronic pain, caused in part by Defendant Doolittle's failure to provide adequate care. (*Id.*) Plaintiff contends that Defendant Doolittle also failed to provide other medication for Plaintiff's pain, with the exception of the 21-day supply of prednisone. (*Id.*)

Defendant Doolittle transferred from LCF on June 28, 2022. (*Id.*) Plaintiff's care was transferred to Defendant Hill. (*Id.*) Plaintiff contends that Defendant Doolittle failed to update Defendant Hill "about her non[]-existent treatment [plan] concerning [Plaintiff's] severe chronic serious medical needs, which forced Plaintiff . . . to suffer unnecessary[y] pain for more months of delays in treatment which [caused] more nerve damage and worse pain." (*Id.*, PageID.40–41.) That same day, Plaintiff sent a medical kite to Defendant Hill, asking for an extra pillow, a bottom bunk detail, an ice detail, and a pain shot in his back. (*Id.*, PageID.42.) Plaintiff also asked to be removed from his work detail and to be placed on "light detail" because of his pain. (*Id.*)

On July 8, 2022, Plaintiff was sent to the Henry Ford Allegiance Hospital for an MRI for his back. (*Id.*, PageID.43.) On July 9, 2022, Dr. Waseem Ullah (not a party) received the MRI images and diagnosed Plaintiff with hemangioma and "mild facet disease at L3/4 through L5/S1 with minimal fluid in the level of L3/4 and L4/5." (*Id.*)

Plaintiff contends that he was not seen by Defendant Hill or any other healthcare provider from May 23, 2022, through July 8, 2022. (*Id.*) On July 18, 2022, Plaintiff submitted a medical kite, asking to see Defendant Hill for back pain. (*Id.*, PageID.44.) On July 27, 2022, Plaintiff

submitted another medical kite, requesting to see the provider and asking for something for his back pain and leg numbness. (*Id.*) On August 9, 2022, Plaintiff submitted yet another kite asking to see Defendant Hill. (*Id.*)

On August 11, 2022, Plaintiff was called to health services to see Defendant Hill for the first time. (*Id.*) Defendant Hill told Plaintiff that he was there for a medical chart review and to discuss the MRI. (*Id.*, PageID.45.) Plaintiff asked Defendant Hill "what would be her first plan of action concerning [his] medical diagnoses." (*Id.*) Defendant Hill responded that "she would get back with him by the time [of] his next 6 month check-up appointment." (*Id.*) Plaintiff suggests, however, that Defendant Hill has not provided any treatment for his back, leg, and foot pain since taking over for Defendant Doolittle.

Plaintiff alleges that after he submitted numerous kites to the healthcare department, Registered Nurse Michael Travis (not a party) told Plaintiff to stop submitting kites "because his medical condition was not serious enough for anyone to look at him ever." (*Id.*, PageID.46.) Plaintiff states that he had a telemedicine visit with Dr. Robert Crompton (not a party) on November 9, 2022. (*Id.*, PageID.47.) During that visit, Dr. Crompton told Plaintiff that he would be referring Plaintiff to the pain modification committee "for approval for real pain medication." (*Id.*) Plaintiff "asked when would this be done." (*Id.*) Dr. Crompton told him "as soon as possible." (*Id.*) Plaintiff avers, however, that "it is now a new year . . . and nothing has been done!" (*Id.*) Throughout his complaint, Plaintiff alleges that the failure to receive adequate medical care stems from policies set forth by Corizon and Wellpath Now. He suggests that those contracted medical providers delay necessary treatment in order to maximize profits.

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights, alleging that all Defendants were deliberately indifferent to his need for

adequate care for his various medical conditions. Plaintiff also asserts violations of his rights under Title II of the ADA. Finally, Plaintiff raises claims regarding violations of MDOC policies, as well as state law claims for gross negligence and medical malpractice, against Defendants. He seeks no less than $5 million in damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.      Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.      Eighth Amendment Claims

Plaintiff contends that Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs. In keeping with the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component,

the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted). "[I]f a plaintiff suffered from a minor or non-obvious medical condition, he can show that his condition was objectively serious 'if it is one that has been diagnosed by a physician as mandating treatment.'" *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (quoting *Blackmore*, 390 F.3d at 897).

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.    Objective Component

Throughout his complaint, Plaintiff alleges that he suffers from various ailments, including chronic pain in his lower back and legs, and that his issues have gotten worse during his incarceration. Given Plaintiff's allegations, the Court concludes that he has sufficiently alleged that he suffers from serious medical needs for purposes of his Eighth Amendment claims. *See, e.g.*, *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir. 2003) (concluding that deliberate indifference to

12

chronic pain violated the Constitution); *Harrison v. Barkley,* 219 F.3d 132, 136–37 (2d Cir. 2000) (finding that deliberate indifference to degenerative condition violated the Constitution).

### b.    Subjective Component

### (i)    Defendant Wellpath Now of Michigan

Defendant Wellpath Now of Michigan is one of the companies that contracted with the MDOC to provide medical care to inmates during the relevant time. A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates—as Wellpath Now does—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City*

*of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Wellpath Now, Wellpath Now's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellpath Now's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

In his amended complaint, Plaintiff alleges that Defendant Wellpath Now "routinely engages in customary and known practices so as to maximize profits." (ECF No. 14-1, PageID.53.) Plaintiff contends that Defendant Wellpath Now employs the following polices and customs to do so: "inadequately staffing facilities; employing unqualifies staff; failing to train and/or vet staff; [and] delaying and/or denying life-saving medical care, even in emergency situations." (*Id.*) According to Plaintiff, Defendant Wellpath Now has a "custom and policy of providing substandard care for the purpose of cutting cost[s]." (*Id.*, PageID.55.) Given these allegations, Plaintiff's Eighth Amendment claims against Defendant Wellpath Now may not be dismissed on initial review.

### (ii)     Defendant Morrison

Plaintiff's sole allegation against Defendant Morrison is that he "fail[ed] to properly train and supervise . . . employees so that they could provide the necessary medical care" to Plaintiff. (*Id.*, PageID.52.) However, administrative or custody officials, such as Defendant Morrison, who have no training or authority to supervise healthcare officials typically cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's

14

judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Moreover, non-medically trained prison officials are not deliberately indifferent when they defer to a "medical recommendation that he [or she] reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))). Defendant Morrison cannot be considered deliberately indifferent by deferring to any treatment provided by the healthcare department.

Plaintiff's amended complaint is devoid of facts from which the Court could infer that Defendant Morrison was subjectively aware of any substantial risk of harm to Plaintiff and ignored that risk. Moreover, it appears that Plaintiff seeks to hold Defendant Morrison liable because of his position as Warden at LCF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

15

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege that Defendant Morrison encouraged or condoned the conduct of any healthcare officials, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff's conclusory allegations of supervisory liability are insufficient to demonstrate that

Defendant Morrison was personally involved in the events described in Plaintiff's complaint. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendant Morrison.

### (iii)    Defendants Doolittle and Hill

In his amended complaint, Plaintiff alleges that during his incarceration at LCF, he saw a few outside providers, who diagnosed him with various conditions, including lumbago and numbness and pain in his lower back and legs. Plaintiff avers further that Defendant Doolittle determined that Plaintiff should be prescribed prednisone for these conditions, but only prescribed him a 21-day supply and failed to prescribe any more pain medication after that supply was exhausted. (ECF No. 14-1, PageID.40.) Plaintiff alleges that Defendant Doolittle essentially left his conditions untreated, and that Defendant Hill has failed to provide any treatment for his conditions since taking over Plaintiff's care after Defendant Doolittle's departure. Although Plaintiff has by no means proven deliberate indifference at this time, taking the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently alleged that Defendants Doolittle and Hill were aware of a substantial risk of harm to Plaintiff and disregarded that risk. Thus, Plaintiff has sufficiently set forth Eighth Amendment claims against Defendants Doolittle and Hill premised upon their alleged deliberate indifference to Plaintiff's medical needs.

### 2.    Fourteenth Amendment Claims

Plaintiff also alleges that Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill violated his Fourteenth Amendment rights. Presumably, Plaintiff intends to raise Fourteenth Amendment substantive due process claims against these Defendants.[6]

---

[6] Alternatively, Plaintiff may refer to the Fourteenth Amendment solely for its incorporation of the relevant provisions under the Eighth Amendment, *see Robinson v. California*, 370 U.S. 660, 667 (1962), as applied to the States. In that event, no further discussion of the Fourteenth Amendment claim is required.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process ... serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 269 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his deliberate indifference claims. *See Graham*, 490 U.S. at 394 *(*citing

*Whitley v. Albers*, 475 U.S. 312, 327 (1986)) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (concluding that because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Thus, the standard applicable to that source, the Eighth Amendment right to be free from cruel and unusual punishment, and not the more generalized notion of substantive due process, should be applied. Consequently, Plaintiff's Fourteenth Amendment substantive due process claims against Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill will be dismissed.

### B.      ADA Claims

Plaintiff also asserts violations of his rights under Title II of the ADA against Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill. (ECF No. 14-1, PageID.50.) Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff, however, indicates that he is suing Defendants in their individual capacities only. (ECF No. 14-1, PageID.33.) For that reason alone, he cannot maintain his ADA claims against Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill.

Furthermore, Plaintiff's factual allegations fail to suggest that Wellpath Now of Michigan, Morrison, Doolittle, and Hill denied adequate medical treatment because of any disability that Plaintiff may suffer. As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA is not an appropriate federal cause of action to challenge the sufficiency of medical treatment. *See, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the [Rehabilitation Act (RA)] nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not

state a claim under the ADA.'").[2] Plaintiff, therefore, has failed to state claims against Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill for violations of the ADA, and such claims will be dismissed.

### C.    Violations of MDOC Policy and State Law Claims

As noted above, Plaintiff asserts state law claims for gross negligence and medical malpractice against Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). With respect to Plaintiff's claims concerning MDOC policy, the only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) ("The ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'"); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he [ADA] would not be violated by a prison's simply failing to attend to the medial needs of its disabled prisoners."); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

(6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegations that Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill violated MDOC policy and procedure, therefore, fail to cognizable federal constitutional claims.

Plaintiff may seek to invoke this Court's supplemental jurisdiction over his state law claims for violations of MDOC policy, gross negligence, and medical malpractice. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, Plaintiff's Eighth Amendment claims against Defendants Wellpath Now of Michigan, Morrison, Doolittle, and Hill remain pending. The Court, therefore, will exercise supplemental jurisdiction over Plaintiff's state law claims against those Defendants. The Court, however, has dismissed all of Plaintiff's federal claims against Defendant Morrison. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Morrison, and such claims will be dismissed without prejudice.

### Conclusion

Upon review, Plaintiff's motion for leave to file an amended complaint (ECF No. 14) will be granted, and Plaintiff's proposed amended complaint (ECF No. 14-1) will be docketed as an amended complaint.

Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendant Morrison will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendant Morrison will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment claims and ADA claims against Defendants Wellpath Now of Michigan, Doolittle, and Hill. Plaintiff's Eighth Amendment claims, as well as his state law claims, against Defendants Wellpath Now of Michigan, Doolittle, and Hill remain in the case.

An order consistent with this opinion will be entered.

Dated:   June 12, 2023                    /s/ Ray Kent
                                          Ray Kent
                                          United States Magistrate Judge

23