UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPELTON KELLY,

        Plaintiff,

v.

CORIZON OF MICHIGAN, *et al.*,

        Defendants.

                          /

Case No. 1:23-cv-67

Hon. JANE M. BECKERING

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Opelton Kelly (referred to as "plaintiff" or "Kelly") is a prisoner in the custody of the Michigan Department of Corrections (MDOC). Kelly filed this action pursuant to 42 U.S.C. § 1983, alleging that the following defendants violated his constitutional rights: Corizon of Michigan ("Corizon") and Wellpath Now of Michigan ("Wellpath") (both of which contracted with the MDOC to provide medical care to inmates); Warden B. Morrison; Nurse Practitioner (NP) Heather Doolittle; and NP Ecoe Hill. *See* Opinion (ECF No. 10, PageID.18).

After the Court denied Kelly *in forma pauperis* status under the three strikes rule, Kelly paid the filing fee and filed an amended complaint alleging violations of his constitutional rights and the Americans with Disabilities Act (ADA). Opinion (ECF No. 15, PageID.59). On initial screening, the Court dismissed defendant Morrison. *Id*. at PageID.61. The Court also dismissed all of the claims against defendants Wellpath, NP Doolittle, and NP Hill except for Kelly's alleged Eighth Amendment violations and his state law claims of gross negligence and medical malpractice. *Id*. at PageID.61-62. Finally, the Court did not address Kelly's claims

1

against Corizon, which had filed bankruptcy.[1] This matter is now before the Court on defendants Wellpath, NP Doolittle, and NP Hill's motion for summary judgment based solely on the failure to exhaust administrative remedies (ECF No. 28).

## I.    Kelly's allegations

Kelly's claims arose at the Lakeland Correctional Facility (LCF) in 2021 and 2022. Opinion at PageID.62-65. On initial screening of the amended complaint, this Court observed that

> The gravamen of Plaintiff's amended complaint concerns his assertions that he has not received adequate medical care for numerous conditions. Plaintiff contends that he has suffered from a mini-stroke, hemangioma tumors, mild facet disease, paresthesia, gait abnormality, lumbar pain, and numbness in his right and left legs and feet. (Am. Compl., ECF No. 14-1, PageID.33.) Plaintiff suggests that Defendants' failure to treat these conditions means that "paralysis is imminent and death." (*Id*., PageID.34.) Plaintiff, however, does not mention many of these conditions again in the facts section of his complaint.

Opinion at PageID.62-63 (footnotes omitted). The Court's opinion set out plaintiff's allegations against NP Doolittle (from April 8, 2021, through June 28, 2022) and NP Hill (June 28, 2022 through November 9, 2022). *Id*. at PageID.63-65.[2]

## II.    Defendants' Motion for summary judgment

### A.    Legal standard

Defendants Wellpath, NP Doolittle, and NP Hill moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] *See* fn. 3 (ECF No. 15, PageID.62) ("In accordance with 11 U.S.C. § 362, this civil action against Corizon is automatically stayed as to the debtor until the bankruptcy proceedings in question are terminated or the stay is lifted. 11 U.S.C. § 362(c). The Court will not address Plaintiff's claims against Corizon on screening.").

[2] In their brief, defendants refer to plaintiff's treatment from NP Hill as commencing as early as May 23, 2022. Defendants' Brief (ECF No. 28, PageID.163).

Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Lack of Exhaustion

#### 1. Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See*

3

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.   MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator. *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

#### a. Grievance LCF-22-08-0598-28C ("598")

Defendants identified three grievances which Kelly filed at LCF during the relevant time period (April 8, 2021, through November 9, 2022). *See* Defendants' Brief (ECF No. 28, PageID.165); MDOC Step III Grievance Report and Affidavit (ECF No. 28-1); Opinion at PageID.63-65 (reciting Kelly's allegations).  Kelly did not file a grievance against defendant Wellpath.  Kelly's only grievance which named defendants NP Doolittle and/or NP Hill was Grievance 598, which involved an incident date of August 11, 2022, and requested "the surgery required to correct the problem".  Grievance 598 (ECF No. 28-1, PageID.178-180).  Kelly's grievance briefly referred to some aspects of his healthcare treatment, some of which occurred over a year before the incident date, as follows (in his words):

> Since 4/08/2021 Kelly has been repeatedly requesting to be treated for his severe back pain by LCF Health Care PA Heather Doolittle and Ecoe Hill.  On Monday, 5/23/2022 Kelly was escorted downtown to Coldwater to see a physician I was diagnosed with my vertebrae bone causing pressure on my spinal canal causing pressure to be placed on to the nerves of my back causing debilitating and relentless pain   This issue has been remained unattended to since 4/08/2021 with no treatment   Kelly has written several kites regarding this issues and  was even given ice detail and Cedaprin/Medique by the RN Kelly still have been informing RN Lori Bive  RN Mary Schultz  RN Jennifer Meyer  RN Michael Travis  RN Rosemary Villasan about the pain  Kelly was informed that there was no PA to you or the PA refused to see you or you will be seen in November.
>
> On 7/08/2022 Kelly was sent to Henry Ford Hospital for an MRI of his back from the dates of 5/23/22 through 7/08/22 Kelly did not see the physician assistant (PA) to update him on the next step or even go over the results with him   Kelly fiance  and sister then sent a letter requesting for assistance to Carmen Mcintyre  On 8/11/2022 Ecoe Hill the physician Assistant  then call Kelly out and went over the results finally  She then started Kelly on a steroid for his back  By display of

>long term delay is attributed deliberate indifference of access of treatment in Heather Doolittle and Ecoe Hill seeing Mr Kelly with constant severe pain pinched nerve in his back. I'm requesting the surgery required to correct the problem.

Grievance 598 at PageID.180.

The MDOC rejected the grievance for the following reasons, "Rejected per PD 03.02.130 – multiple issues to include untimely ones. See Attached." *Id*. The record does not include an "attached" document explaining the rejection. The rejection was upheld at Steps II and III. PageID.177-178. On its face, this record establishes that Kelly's grievance failed to properly exhaust any claims against defendants Wellpath, NP Doolittle, and NP Hill.

In his response, Kelly contends that Grievance 598 was improperly rejected for raising "multiple issues" because it is not against MDOC grievance policy to list "multiple issues". Kelly is correct. PD 03.02.130 ¶ J.1. states that "A grievance shall be rejected by the Grievance Coordinator if: 1. It is vague, illegible, or contains multiple *unrelated* issues." (emphasis added). Defendants did not respond to this issue.

In their reply brief, defendants point out that Kelly ignored the other rationale for rejection, *i.e.*, that his grievance was untimely because it "referred to care provided by two different medical providers, covering multiple dates that were beyond the five (5) day period for filing a grievance after attempting to resolve the issue." Defendants' Reply (ECF No. 35, PageID.232-233). Defendants rely on P.D. 03.02.130 ¶ W, which states that "Within five business days after attempting to resolve a grievable issue with staff, a grievant wishing to advance a grievance must send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator . . ." *See* Defendant's Reply at PageID.232-233; PD 03.02.130 (ECF No. 28-2).

The Court allowed Kelly to file a sur-reply brief, in which he contends that there was no second rationale for rejecting Grievance 598, stating that "the policy says nothing about

6

rejecting a grievance for containing multiple issues to include untimely ones." Sur-reply (ECF No. 42, PageID.257). In this regard, the MDOC can reject a grievance on the basis that, "The grievance is filed in an untimely manner." *See* PD 03.02.130 ¶ J.5. However, the MDOC's cryptic basis for rejection did not reference ¶ J.5. or refer to specific language in the policy directive.

The five-day filing period referenced by defendants arises from PD 03.02.130 ¶ Q, which requires a prisoner to attempt to resolve a problem before filing a grievance:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

*See* PageID.187.

Here, Kelly stated in Grievance 598 that the incident occurred on August 11, 2022, and explained that, "This Issue could not be resolved as there has been many attempts with Health Care trying to get Assistance I need." PageID.180. The MDOC apparently accepted Kelly's explanation because it did not reject Grievance 598 for a failure to resolve the issue. *See* PD 03.02.130 ¶ J.4. The August 11, 2022 incident date coincides with the date that NP Hill reviewed the MRI and delayed Kelly's treatment as alleged in the amended complaint. On that date, NP Hill allegedly reviewed Kelly's MRI, "stated that she would get back with him by the time his next 6 month check-up appointment [sic]" and "improperly delayed treatment of Plaintiff Kelly [sic] serious medical needs." Amend. Compl. at ¶¶ 46-48, PageID.96-97. While the grievance briefly mentions Kelly's medical history since April 8, 2021, it is the August 11, 2022 incident – NP Hill's review of the MRI and the alleged delay of treatment – which was at issue in the grievance. *See* Grievance 598.

Based on this record, the Court concludes that Grievance 598 was directed solely at NP Hill for her actions on August 11, 2022, and that Kelly timely filed the grievance three days after the incident. The Court further concludes that there was no legal basis for the MDOC to reject Grievance 598 for the cryptic reasons stated in the grievance response. *See Brooks v. Hardy*, No. 1:16-cv-1336, 2017 WL 6048822 at *2 (W.D. Mich. Dec. 6, 2017) ("As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust.") (internal quotation marks omitted). Based on this record, the Court concludes that Kelly's Grievance 598 properly exhausted his Eighth Amendment claim against NP Hill for the August 11, 2022 incident alleged in his amended complaint.

        **b.**        **Grievance SRF-2023-05-0425-28B ("425")**

In his response, Kelly also referred to Grievance 425 which he filed at Saginaw Correctional Facility (SRF) on May 21, 2023. Grievance 425 (ECF No. 31-6, PageID.216-220). In Grievance 425, plaintiff complained that on or about May 17, 2023, SRF Healthcare, Corizon *et al* and Wellpath *et al* are denying or delaying healthcare services in violation of his Eighth Amendment rights. Grievance 425 at PageID.217. Grievance 425 is irrelevant to this lawsuit. This grievance does not involve any claims alleged in the amended complaint, all of which occurred at LCF before Kelly transferred to SRF. Grievance 425 is irrelevant to the allegations set forth in the amended complaint.

Furthermore, the MDOC rejected Grievance 425 at Step I stating,

> Per PD-03.02.130 <u>Prisoner/Parolee Grievances</u>, states, "A grievance may be rejected for any of the following reasons: It is **vague**, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant." **Specific Dates, times, places, and names of all those involved in the issue being grieved are to be included. Corizon Inc was the previous provider. As of September 2021, the MDOC now uses WellPath.**

> **It is unclear the exact timeline for when you were denied your medical needs.**
> This grievance is rejected at Step I.

Grievance 425 (ECF No. 31-6, PageID.217) (emphasis in original). The rejection was upheld at Steps II and III. PageID.219-220. Accordingly, Kelly did not properly exhaust Grievance 425. *See Brooks*, 2017 WL 6048822 at *2.

### c.     Conclusion

Based on this record, the Court concludes that Kelly did not properly exhaust any claims against defendants Wellpath and NP Doolittle. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted as to these two defendants.

The Court also concludes that Grievance 598 exhausted Kelly's claim that defendant NP Hill violated his Eighth Amendment rights during the August 11, 2022 incident. Accordingly, NP Hill's motion for summary judgment should be denied with respect to the August 11, 2022 incident and granted in all other respects.

### III.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 28) be **GRANTED** as to defendants Wellpath Now of Michigan and NP Doolittle.

I further recommend that the motion for summary judgment be **GRANTED** as to plaintiff's claims alleged against defendant NP Hill which occurred prior to August 11, 2022.

I further recommend that the motion for summary judgment be **DENIED** as to defendant NP Hill with respect to plaintiff's claim that Hill violated his Eighth Amendment rights when Hill failed to review his MRI until August 11, 2022.

Based on these recommendations, this case should proceed against NP Hill on that single claim.


Dated:  April 26, 2024                               /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).